UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERESA ANN DOBBS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-3152** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.** | **SECTION: D (4)** |

**ORDER AND REASONS**

Before the Court is BP's *Daubert* Motion to Exclude the Causation Testimony of Plaintiff's Expert, Dr. Jerald Cook[1] filed by Defendants BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. as well as Defendants' Motion for Summary Judgment.[2] Halliburton Energy Services, Inc., Transocean Holdings, LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. (collectively "Defendants") have joined in both motions.[3] Plaintiff Teresa Dobbs ("Plaintiff") opposes both Motions.[4] Defendants have filed Replies in support of their Motions.[5]

Also before the Court is a Motion for Admission of Plaintiffs' [sic] Expert Opinions Because of BP Defendants' Spoliation of Evidence of Plaintiff's Exposure, filed by the Plaintiff.[6] Defendants oppose this Motion.[7]

After careful consideration of the parties' memoranda, the record, and the applicable law, BP's *Daubert* Motion to Exclude the Causation Testimony of

---

[1] R. Doc. 56.
[2] R. Doc. 57.
[3] *See* R. Doc. 56 n.1; R. Doc. 57 n.1.
[4] R. Doc. 59; R. Doc. 60.
[5] R. Doc. 64; R. Doc. 65.
[6] R. Doc. 58.
[7] R. Doc. 66.

Plaintiff's Expert, Dr. Jerald Cook and Defendants' Motion for Summary Judgment are **GRANTED**, and Plaintiff's Motion for Admission of Plaintiffs' [sic] Expert Opinions Because of BP Defendants' Spoliation of Evidence of Plaintiff's Exposure is **DENIED**.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

This case arises from the *Deepwater Horizon* oil spill in the Gulf of Mexico in 2010 and the subsequent cleanup efforts of the Gulf Coast. On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict litigation arising out of the *Deepwater Horizon* incident, approved the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[8] However, certain individuals, referred to as "B3" plaintiffs, either opted out of or were excluded from the MSA.[9] Plaintiff Teresa Dobbs opted out of the MSA and, accordingly, is a B3 plaintiff.[10]

Plaintiff filed this individual action against Defendants on April 11, 2017 to recover for injuries allegedly sustained as a result of the oil spill.[11] For approximately seven months in 2010, Plaintiff worked as a beach cleanup worker, tasked with cleaning up oil and oil-covered debris from the beaches and coastal areas near Gulfport, Biloxi, Long Beach, Pass Christian, and Cat Island, Mississippi.[12] Plaintiff alleges that Defendants' negligence and recklessness in both causing the Gulf oil spill

---

[8] *See* Brown v. BP Expl. & Prod. Inc., Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (citation omitted) (Africk, J.).
[9] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021).
[10] R. Doc. 1 at ¶ 5.
[11] *Id.*
[12] R. Doc. 56-2 at p. 5.

and subsequently failing to properly design and implement a clean-up response caused her to suffer myriad injuries including headaches, memory loss, dizziness, GERD, abdominal pains, sinus problems, rhinitis, chemically induced RADS, rash, skin irritation, eye irritation, and burning eyes.[13] Specifically, Plaintiff seeks to recover economic damages, personal injury damages—including damages for past and future medical expenses and for pain and suffering—punitive damages, and attorneys' fees, costs, and expenses.[14]

To help support her claims that exposure to the chemicals present in the oil spilled by Defendants caused her particular health symptoms, Plaintiff offers the report ("Report") and testimony of Dr. Jerald Cook.[15] Dr. Cook is a retired Navy physician with expertise specifically as an occupational and environmental physician.[16] Dr. Cook's Report is not tailored directly to Plaintiff's claims; rather, Dr. Cook's generic causation Report has been utilized by numerous B3 plaintiffs, including many plaintiffs currently before this Court as well as in other cases before other sections of this court.[17] Accordingly, Dr. Cook's Report pertains only to general causation and not to specific causation.

Defendants filed the instant Motion *in limine* and Motion for Summary Judgment on February 14, 2023. In their Motion *in limine*, Defendants contend that Dr. Cook should be excluded from testifying due to, *inter alia*, Dr. Cook's failure to

---

[13] *See* R. Doc. 56-3.
[14] R. Doc. 1 at pp. 5–6.
[15] R. Doc. 56-4.
[16] *Id.* at p. 8.
[17] *See Johns v. BP Expl. & Prod. Inc.*, No. CV 17-3304, 2022 WL 1811088, at *2 (E.D. La. June 2, 2022) (Ashe, J.) ("Cook issued an omnibus, non-case specific general causation expert report that has been used by many B3 plaintiffs.").

identify the harmful level of exposure capable of causing Plaintiff's particular injuries for each chemical that Plaintiff alleges to have been exposed to. Because Dr. Cook should be excluded from testifying, Defendants argue, the Court should grant their Motion for Summary Judgment as Plaintiff is unable to establish general causation through expert testimony, a necessary requirement under controlling Circuit precedent.

In response, Plaintiff argues that Dr. Cook's Report satisfies the *Daubert* standards for reliability and relevancy and, therefore, that summary judgment is inappropriate. Plaintiff also filed a Motion for Admission of Plaintiffs' [sic] Expert Opinions Because of BP Defendants' Spoliation of Evidence of Plaintiff's Exposure, in which Plaintiff argues that Dr. Cook's Report and general causation opinions should be deemed reliable and admissible under Fed. R. Evid. 702 because of BP's alleged failure to collect exposure data on oil spill cleanup workers.[18] Plaintiff argues that BP had an obligation to preserve evidence that it reasonably anticipated may have been relevant to future litigation and that BP intentionally destroyed said evidence in bad faith.[19]

Defendants filed a response in opposition to Plaintiff's spoliation Motion, arguing that Plaintiff cannot demonstrate spoliation of evidence because there never was evidence to spoliate in the first place.[20] Defendants also contend that the issue of biological monitoring of cleanup workers is irrelevant to the reliability and

---

[18] R. Doc. 58.
[19] R. Doc. 58-1 at pp. 20–24.
[20] *See* R. Doc. 66 at pp. 13–14.

admissibility of Dr. Cook's Report.[21] Finally, Defendants argue that the remedy sought by Plaintiff—admission of Dr. Cook's Report—is inappropriate and without basis.[22]

## II.   LEGAL STANDARD

### A. Motion *in Limine*

The district court has considerable discretion to admit or exclude expert testimony under Fed. R. Evid. 702,[23] and the burden rests with the party seeking to present the testimony to show that the requirements of Rule 702 are met.[24] Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education may testify in the form of an opinion" when all of the following requirements are met:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.[25]

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as "gatekeepers" when

---

[21] *See id.* at pp. 23–25.
[22] *See id.*
[23] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000); *Tajonera v. Black Elk Energy Offshore Operations, LLC*, Civ. A. No. 13-0366 c/w 13-0550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, 14-1714, 2016 WL 3180776, at *8 (E.D. La. June 7, 2016) (Brown, J.) (citing authority).
[24] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[25] Fed. R. Evid. 702; *Tajonera*, 2016 WL 3180776, at *8.

determining the admissibility of expert testimony.[26] "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[27] According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[28] The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[29]

To satisfy the reliability prong of the *Daubert*/Rule 702 analysis, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[30] To prove reliability, the proponent of the expert testimony must present some objective, independent validation of the expert's methodology.[31] The objective of this Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[32]

---

[26] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).
[27] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).
[28] *Ebron*, 683 F.3d at 139 (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).
[29] *Tajonera*, 2016 WL 3180776, at *8 (citing *Daubert*, 509 U.S. at 590).
[30] *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (S.D. Tex. Sept. 18, 2020) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)) (internal quotation marks omitted).
[31] *Recif Res., LLC*, 2020 WL 5623982, at *2 (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).
[32] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

### B. Spoliation of Evidence

Spoliation is the destruction or serious and material alteration of evidence, including "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[33] A court may sanction a party for spoliation evidence under the court's inherent sanction power.[34]

There are three elements to a claim for spoliation: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith."[35] "A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use."[36] Although parties have a duty to preserve evidence, that duty "does not include the duty to create evidence."[37]

### C. Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] When assessing whether a

---

[33] *Fairley v. BP Expl. & Prod. Inc.*, No. CV 17-3988, 2022 WL 16731817, at *3 (E.D. La. Nov. 3, 2022) (Ashe, J.) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011)).
[34] *See Coastal Bridge Co., LLC v. Heatec, Inc.*, 833 Fed. Appx. 565, 573 (5th Cir. 2020).
[35] *Id.* at 574 (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013)).
[36] *Id.* at 574 (citing *Catoire v. Caprock Telecommunications Corp.*, No. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002)).
[37] *Fairley*, 2022 WL 16731817, at *3 (quoting *De Los Santos v. Kroger Tex., LP*, No. 14-3086, 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015)) (further citations omitted).
[38] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[39] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[40] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[41]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[42] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[43] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[44] The burden then shifts to the nonmoving party who must go beyond

---

[39] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[40] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[41] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).
[42] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[43] *Id.* at 1265.
[44] *See Celotex*, 477 U.S. at 322–23.

the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[45]

## III. ANALYSIS

### A. Motion *in limine*

The burden of proof is on the B3 plaintiffs to prove that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[46] To prove causation, the B3 plaintiffs are required to provide reliable expert testimony.[47] "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."[48]

Courts use "a two-step process in examining the admissibility of causation evidence in toxic tort cases."[49] First, a court must determine whether general causation exists.[50] "General causation is whether a substance is capable of causing a particular injury or condition in the general population."[51] Second, if the court finds that there is admissible general-causation evidence, "the district court must determine whether there is admissible specific-causation evidence."[52] "[S]pecific causation is whether a substance caused a particular individual's injury."[53] If the

---

[45] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[46] *In re Oil Spill*, 2021 WL 6053613, at *11.
[47] *See, e.g., Seaman v. Seacor Marine, LLC*, 326 Fed. Appx. 721, 723 (5th Cir. 2009).
[48] *Id.* (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).
[49] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).
[50] *Id.*
[51] *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).
[52] *Id.*
[53] *Id.*

court finds that there is no admissible general causation evidence, it need not consider the issue of specific causation.[54]

To establish general causation, a causation expert must identify "the harmful level of exposure to a chemical" at which physical symptoms manifest.[55] As explained by Dr. Cook, nearly every chemical on Earth may be toxic or even fatal at a certain level of exposure.[56] Thus, causation experts determine not only *whether* a chemical is capable of causing certain health effects, but *at what level* of exposure do those health affects appear. Experts, such as Dr. Cook, refer to this inquiry with the maxim, *dosis sola facit venenum*, or "the dose determines the poison."[57] This analysis is also referred to in the Bradford Hill factors as the dose-response relationship.[58]

In recognition of the importance of this step of the causation analysis, the American Medical Association's *Guide to the Evaluation of Disease and Injury Causation* states that determining "whether the estimated dose was sufficient to explain observed clinical effects known to be associated with the agent in question" is the "most critical phase of the hazard evaluation process."[59] Relatedly, the Fifth Circuit states that this detail is one of the "minimal facts necessary to sustain the

---

[54] *Id.* ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").
[55] *Allen*, 102 F.3d at 199.
[56] R. Doc. 56-4 at p. 32; *see also English v. BP Expl. & Prod. Inc.*, No. CV 13-1033, R. Doc. 48-6 (Deposition of Dr. Jerald Cook) at 150:14–16 (E.D. La. September 26, 2022) (Vitter, J.) ("Like I said, something not very harmful, such as water, can become harmful at a high enough dose.").
[57] R. Doc. 56-4 at p. 32. Such knowledge dates back to at least the time of Paracelsus, the great sixteenth-century Swiss philosopher and scientist, who remarked that "[s]olely the dose determines that a thing is not a poison." *See* Joseph Borzelleca, *Paracelsus: Herald of Modern Toxicology*, 53 Toxicological Scis. 2, 4 (1999).
[58] R. Doc. 56-4 at p. 32.
[59] R. Doc. 56-6 at pp. 6–7. Dr. Cook testified that he regularly consults the AMA *Guide. See English*, R. Doc. 48-6 (Deposition of Dr. Jerald Cook) at 59:22–60:1.

plaintiff's burden in a toxic tort case."[60] Plaintiffs must provide reliable expert testimony establishing the requisite level of exposure necessary to cause each alleged physical harm.[61] Accordingly, failure to properly identify the level of exposure to a particular chemical at which harmful effects occur necessarily renders a general causation opinion unreliable and, thus, inadmissible.[62]

This Court has previously considered the June 21, 2022 version of Dr. Cook's Report offered here by Plaintiff, finding that the Report fails to meet the *Daubert* standards for reliability and helpfulness to the trier of fact.[63] For the same reasons set forth in detail in that Order and Reasons, the Court determines that Plaintiff has failed in her burden of establishing the reliability and relevance of her expert's report and finds it appropriate to grant Defendants' Motion *in limine* to exclude Dr. Cook's Report.

**B. Spoliation Motion**

Plaintiff has filed a motion arguing that the Court should find Dr. Cook's opinions admissible because of Defendants' alleged spoliation of evidence.[64] Plaintiff

---

[60] *Allen*, 102 F.3d at 199; *accord McGill v. BP Expl. & Prod., Inc.*, 830 Fed. Appx. 430, 433 (5th Cir. 2020) (affirming exclusion of expert's opinions where "none [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").

[61] *Allen*, 102 F.3d at 195; *see also McGill*, 830 Fed. Appx. at 433 n.1 (excluding expert testimony where the studies relied upon by expert "did not address what level of exposure would be unsafe for humans or *what specific illnesses* that exposure may cause.") (emphasis added).

[62] *See Dawkins v. BP Expl. & Prod., Inc.*, No. CV 17-3533, 2022 WL 2315846, at *6 (E.D. La. June 28, 2022) (Vance, J.), *reconsideration denied*, No. CV 17-3533, 2022 WL 4355818 (E.D. La. Sept. 20, 2022) ("Accordingly, if the Court finds that plaintiff cannot 'prove, at [a] minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population,' then the Court's inquiry into general causation is complete." (quoting *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (Morgan, J.)).

[63] *See Kaoui v. BP Expl. & Prod., Inc.*, No. CV 17-3313, 2023 WL 330510 (E.D. La. Jan. 12, 2023) (Vitter, J.).

[64] R. Doc. 58.

argues that BP intentionally failed to conduct dermal and biological monitoring of the Gulf oil spill cleanup workers and that such failure to do so is the reason why Dr. Cook is unable to provide the requisite dose-response relationship data.[65] Plaintiff contends that Defendants should not be allowed to benefit from their behavior and that excluding Dr. Cook's Report and granting Defendants' Motion for Summary Judgment would only benefit that behavior. Accordingly, the remedy Plaintiff seeks for Defendants' alleged spoliation of evidence is the admission of Dr. Cook's Report.[66]

As discussed above, to properly assert a spoliation claim, Plaintiff must demonstrate that: (1) Defendants controlled the evidence and were obliged to preserve it at the time of destruction; (2) Defendants intentionally destroyed the evidence; and (3) Defendants acted in bad faith.[67] Plaintiff fails to make this showing.

The chief flaw in Plaintiff's argument is that Plaintiff does not point to any actual evidence allegedly spoiled by Defendants. It is tautological that spoliation of evidence requires evidence capable of spoliation. But, here, Plaintiff chides Defendants not for destroying existing evidence, but for refusing to create potential evidence in the form of biological monitoring data. Put differently, Plaintiff asks this Court to sanction Defendants for not *creating* evidence in the first place. That is not the law, nor would it be tenable in practice.[68] Plaintiff has not provided any support

---

[65] *See* R. Doc. 58-1 at pp. 1, 20. The Court previously addressed this argument, *see, e.g.*, *Kaoui*, No. CV 17-3313, R. Doc. 68, and explained why such alleged failure on BP's part to conduct monitoring has no bearing on Dr. Cook's Report.
[66] R. Doc. 58-1 at pp. 1–2.
[67] *Coastal Bridge Co.*, 833 Fed. Appx. at 574 (citing *Port of S. La.*, 927 F. Supp. 2d at 346).
[68] *See Campbell v. B.P. Expl. & Prod., Inc.*, No. CV 17-3119, 2022 WL 17251115, at *11 (E.D. La. Nov. 28, 2022) (Vance, J.) ("This is not a cognizable theory of spoliation, and it would expand the definition of spoliation beyond any reasonably administrable limits.").

for that proposition, and the Court has found none. The upshot of Plaintiff's argument is that sanctionable misconduct occurs every time a party could have but refuses to create evidence potentially favorable to another party. Unsurprisingly, every court to have considered Plaintiff's argument has rejected it.[69] This Court concurs and finds no merit to Plaintiff's argument.

Finally, the remedy sought by Plaintiff, even if she could prove spoliation, is wholly inappropriate. The Court finds no basis—and Plaintiff has failed to provide any support—for the theory that an unreliable, unhelpful, and otherwise inadmissible expert opinion may nevertheless be admitted due to one party's alleged spoliation. It is the Court's obligation as the gatekeeper of expert testimony to determine that such evidence is reliable and admissible. Plaintiff's suggested remedy would have this Court flatly ignore its responsibilities and the Federal Rules of Evidence by allowing introduction of scientifically unreliable testimony as a remedy for the spoliation of evidence. Because the Court finds no merit to Plaintiff's Motion, the Court denies Plaintiff's Motion for Admission of Plaintiff's Expert Opinions Because of BP Defendants' Spoliation of Evidence of Plaintiff's Exposure.

---

[69] *See, e.g.*, *id.*; *Fairley v. BP Expl. & Prod. Inc.*, No. CV 17-3988, 2022 WL 16731817, at *3 (E.D. La. Nov. 3, 2022) (Ashe, J.) ("[C]ourts have consistently held that the failure to create evidence is not spoliation."); *see also United States v. Greco*, 734 F.3d 441, 447 (6th Cir. 2013) ("A failure to collect evidence that may or may not have been available for collection is very different from the intentional destruction of evidence that constitutes spoliation.").

### C. Motion for Summary Judgment

For the above reasons, Plaintiff lacks expert testimony on general causation. Without expert testimony, which is required to prove general causation,[70] Plaintiff has failed to demonstrate a genuine dispute of material fact regarding her claims that her injuries were caused by exposure to oil. "When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage."[71] Thus, Defendants' Motion for Summary Judgment must be granted as Defendants are entitled to judgment as a matter of law due to Plaintiff's failure to establish general causation.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' *Daubert* Motion to Exclude the Causation Testimony of Plaintiff's Expert, Dr. Jerald Cook[72] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Admission of Plaintiffs' [sic] Expert Opinions Because of BP Defendants' Spoliation of Evidence of Plaintiff's Exposure[73] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment[74] is **GRANTED**.

---

[70] *See, e.g.*, *Perkins v. BP Expl. & Prod.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.) ("In a toxic tort suit such as this one, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation.").
[71] *Williams*, 2019 WL 6615504, at *11.
[72] R. Doc. 56.
[73] R. Doc. 58.
[74] R. Doc. 57.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED with prejudice**.

New Orleans, Louisiana, April 18, 2023.

**WENDY B. VITTER**
**United States District Judge**